IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SAMUEL SANTOS VALDEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:09-CV-815-M (BF) |
| | § | |
| COMMISSIONER, SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

The District Court referred this case to the United States Magistrate Judge for findings, conclusions, and recommendation, pursuant to 28 U. S. C. § 636(b). This is an appeal from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying the claim of Samuel Santos Valdez ("Plaintiff" or "Valdez") for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and Supplemental Security Income disability benefits ("SSI") under Title XVI of the Act. The Court has considered Plaintiff's Brief (doc. 17), filed September 24, 2009 ("Pl.'s Br."), Defendant's Brief (doc. 18), filed October 20, 2009 ("Def.'s Br."), and Plaintiff's Response to Defendant's Brief (doc. 19), filed October 22, 2009. The Court has reviewed the parties' evidence in connection with the pleadings, and hereby recommends that the District Court affirm the ALJ's decision and deny Plaintiff's request for relief.

**Statement of the Case**

On April 24, 2006, Plaintiff protectively filed for DIB and SSI benefits, alleging a disability onset date of March 10, 2000, due to a back injury, leg problems, and a stomach virus. (Tr. 175-77, 181-83, 199[2].) The Commissioner denied Valdez's applications. (*Id.* 127-38, 141-43.) Plaintiff requested an administrative hearing. (*Id.* 144.) The ALJ held a hearing on April 9, 2008. (*Id.* 101-26.) Plaintiff was 36 years old at the time of the administrative hearing. (*Id.* 288.) He had earned a General Education Diploma (GED) which is the equivalent of a high school education. (*Id.* 99, 105.) He had past relevant work ("PRW") as a stamp operator, meat cutter, and assembler. (*Id.* 200.)

At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 10, 2000. (*Id.* 93.) At step two, the ALJ found severe impairments of a compression fracture of the thoracic spine, degenerative disc disease of the lumbar spin at L4-5 and L5-S1, and obesity. (*Id.* 93.) At step three, the ALJ found that Plaintiff's medically determinable impairments did not meet or equal a listed impairment as defined in 20 C.F.R. § Pt. 404, Subpt. P., App. 1. (*Id.* 95.) The ALJ determined that Plaintiff had the following residual functional capacity ("RFC"): "[the] capacity to occasionally lift and/or carry (including upward pulling) 20 pounds; to frequently lift and/or carry (including upward pulling) 10 pounds; to stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; to sit (with normal breaks) for a total of about 6 hours in an 8-hour workday and to push and/or pull (including operations of hand and foot controls) consistent with his strength limitations. He also found that the claimant's ability to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and

---

[2]"Tr." refers to the certified administrative transcript of the proceedings.

416.967(b) is reduced by an inability to climb, balance, stoop, kneel, crouch and crawl on more than an occasional basis." (*Id*. 96, 19.) At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a stamp operator, meat cutter, or assembler. (*Id*. 98.) A vocational expert ("VE") testified at the hearing, and the ALJ decided at step five that Plaintiff could perform a significant number of light, unskilled jobs in the national economy, such as cafeteria attendant (45,000 jobs in his state and 415,474 jobs nationally), stock checker (7,446 jobs in his state and 789,630 jobs nationally), and cleaner or housekeeper (52,000 jobs in his state and 2,000,000 jobs nationally). (*Id*. 99, 124-125.) The ALJ found that Plaintiff was not disabled at any time prior to the date of the decision. (*Id*. 100.)

Plaintiff appealed, and on March 13, 2009, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (*Id*. 1-4.) Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

### **Medical History**

Plaintiff suffered back injuries an automobile accident on March 10, 2000. In July 2002, the Texas Department of Corrections provided Plaintiff with MRIs and other treatment. An MRI of July 9, 2002, showed the following impairments:

> There is a healed anterior wedge compression injury of T12 which has contributed to a deformation that has allowed a new element of pseudarthrosis of the T12 vertebra with the superior endplate of L1 as described. (*Id*. 294.)

A later MRI of his thoracic spine shows the following impairments:

> Marked destruction of the vertebral body of T12 and the disc of T12-L1 with partial compression to the vertebral body of L1 with resultant increased kyphosis and gibbus deformity at T12-L1 level. (*Id*. 292.)

The MRI of his lumbar spine shows additional impairments:

> Destructive compression to the vertebral bodies of T12 and L1, more pronounced to the T12 vertebra with retropulsion of both the vertebra and posterior portion of the disc into the central spinal canal resulting in high-grade spinal stenosis. Edematous changes and compression of the L1 vertebral body. . . . Other considerations could include osteomyelitis and/or discitis as a cause of the deformity. . . . Mild to moderate disc protrusion is present at L4-5 resulting in moderate spinal stenosis at L4-5. . . . The disc at L5-S1 shows mild central disc protrusion. (*Id*. 293.)

In 2006, Dr. Craig S. Nelson, M.D. ("Dr. Nelson") began treating Plaintiff. Dr. Nelson made the following list of Plaintiff's impairments:

1. Vertebral fracture T12-L1.
2. Severe spinal cord narrowing.
3. Lumbar facet irritation L4-L5, L5-S1 bilaterally.
4. Tightness of right hip external rotators.
5. Weakness of gluteal muscles.

(*Id*. 335.) Dr. Nelson also diagnosed Plaintiff with vertebral fascia. (*Id*. 331.) Other doctors have diagnosed Plaintiff with heartburn, bubbles, runny bowel movements, and clonus (muscle spasm) on right side. (*Id*. 297, 325.)

## Issues

1. Whether the ALJ failed to apply the appropriate legal standard established by the Fifth Circuit Court of Appeals in deciding which of Plaintiff's impairments are severe at Step 2 of the Sequential Analysis.

2. Whether the ALJ's credibility determination is based on substantial evidence.

## Standard of Review

A claimant must prove that he is disabled for purposes of the Social Security Act to be entitled to social security benefits. *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has

4

lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove his disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review

of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan*, 38 F.3d at 236; 42 U.S.C.A. §405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not re-weigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

## Analysis

### Whether the ALJ failed to apply the legal standard established by the Fifth Circuit Court of Appeals in deciding which of Plaintiff's impairments are severe at Step 2of the Sequential Analysis

Valdez claims that the ALJ erred by not citing *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), or by using the definition of "severe " impairment described in *Stone* to evaluate the severity of his numerous medically determinable impairments. (Pl.'s Br. at 5-12.) He also argues that the ALJ did not mention "seventeen separate ailments mentioned in the medical records," claiming that each is an abnormality that qualifies as a severe impairment.[3] (*Id*. at 8-9.) Valdez concludes that each of these abnormalities has a minimal effect on his ability to work and, as such, is a severe

---

[3] Petitioner claims the ALJ should have found the following additional severe impairments from the medical records: "kyphosis and gibbus deformity (hunchback) at T12-L1 level; fairly moderate spinal stenosis at the thoracolumbar junction; lordatic curvature of the cervical spine increased; compression of the L1 vertebral body; chance fracture at the thoracolumbar junction; spinal stenosis at L4-5, greater on the left secondary to the asymmetric disc protrusion to the left of the modline posteriorly at L4-5; mild central disc protrusion with mild impingement upon the thecal sac in its midline at L5-S1 level; pseufoarthrosis of the T12 vertebra with the superior endplate of L1 as described; chronic low back pain; lumbar facet irritation at L4-L5; vertebral fascia; tightness of right hip external rotators; weakness of the gluteal muscles and hamstring muscles; weakness in legs, the right one perhaps a little worse than the left; heartburn; bubbles and runny bowel movements; and clonus (muscle spasm) on the right side.

6

impairment under the *Stone* definition. (*Id*. at 9-11.) He contends that the ALJ's failure to cite the *Stone* standard in evaluating his impairments warrants remand. (*Id*. at 11-12.)

The Commissioner contends that *Stone* does not require reversal and remand for further proceedings at step two. According to the Commissioner, the language and the citations in the ALJ's decision show that the ALJ applied the correct legal standard at step two of the sequential evaluation process. (Tr. 91, 93.) The Commissioner contends the ALJ's decision meets the *Stone* requirement because there is a reference to an opinion "of the same effect" as *Stone*.

In *Stone*, The Fifth Circuit Court of Appeals held:

"[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."

*Stone*, 752 at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984), quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). In *Stone*, the administrative determination against disability was made at step two on grounds of nonseverity. *Stone*, 752 F.2d at 1101. The Fifth Circuit held that in the future it would assume that an incorrect standard had been applied unless the decision contained an express reference to the *Stone* opinion, "or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used." *Stone* 752 F.2d at 1106.

An ALJ is not required to use particular or specific words in describing the applicable step two severity standard. *Hampton v. Bowen*, 785 F.2d 1308, 1310 (5th Cir. 1986) provides:

*Stone* does not require a wholesale remand of all severity cases. A case will not be remanded simply because the ALJ did not use 'magic words.' We remand only where there is no indication that the ALJ applied the correct legal standard. We must read the opinion of the ALJ to carefully ensure that he or she used the "*slight impairment*" standard in the nonseverity determination. (emphasis added).

7

The critical determination is whether the ALJ used the correct legal standard, rather than whether he or she recited the "magic words." After the Fifth Circuit decided *Stone*, the Social Security Administration issued Social Security Ruling (SSR) 85-28 (1985) (Titles II and XVI: Medical Impairments that are Not Severe) 1985 WL 56856 (SSA) (1985). SSR 85-28 provides, in part that:

> Also, [this ruling] is being issued to clarify that SSA's policy is consistent with various court decisions. For example, *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985) and *Estran v. Heckler*, 745 F.2d 340 (5th Cir. 1984), stated that an impairment can be considered as not severe only if it is a slight impairment which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. As *Baeder v. Heckler*, No. 84-5663 (3rd Cir. July 24, 1985), suggested, the severity regulation is to do no more than allow the Secretary to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working.

SSR 85-28 (1985). Later, the Social Security Administration issued SSR 96-3p (1996) (Policy Interpreting Ruling Titles II and XVI: Considering Allegations of Pain and Other Symptoms in Determining Whether a Medical Impairment is Severe). SSR 96-3p provides, in part that:

> [A]n impairment is considered "not severe" only if it is a slight abnormality that causes no more than minimal limitation in the individual's ability to function independently, appropriately, and effectively in an age-appropriate manner. . . . In determining the severity of an impairment(s) at step 2 of the sequential evaluation process set out in 20 C.F.R. §§ 404.1520 and 416.920, evidence about the functionally limiting effects of an individual's impairment(s) must be evaluated in order to assess the effect of the impairment(s) on the individual's ability to do basic work activities. The vocational factors of age, education, and work experience are not considered at this step of the process.

SSR 96-3p (1996).

Plaintiff claimed that he was unable to work due to: "back injury and leg problems and a stomach virus." (Tr. 199) The ALJ determined that Petitioner had the following severe impairments: "history of compression fracture of the thoracic spine, degenerative disc disease of the

lumbar spine at L4-5 and L5-S1 and obesity." (*Id*. 93.) The ALJ stated: "the claimant's impairments, as set out above, have caused more than slight abnormalities and impose more than minimal functional limitation. As such, I find that he has a severe impairment by regulatory definition. *See* 20 C.F.R. §§ 404.1520(c) and 416920(c) (2007) and Social Security Rulings 85-28 and 96-3p." (*Id*.)

An ALJ's reference and citation to SSR 85-28 can show that the Agency adopted the interpretation of the step two severity standard described in *Stone*. *See Fletcher v. Astrue,* No. 7:08-CV-33-AH, 2009 WL 1532113, at *2 (N.D. Tex. June 02, 2009) (ALJ cited SSR 85-28, acknowledged, and noted agreement with *Stone's* definition of "not severe"); *Stewart v. Astrue*, 2009 WL 187581 at *3 (M.D. La. Jan. 26, 2009) (affirming step two denial of benefits where the ALJ cited to SSRs 85-28, 96-3p, and 96-4p).

In this case, the ALJ considered Plaintiff's "slight abnormalities" and relied upon regulatory definitions SSR 85-28 and SSR 96-3p, thus depending upon an interpretation "of the same effect" as *Stone*. *Stone,* 752 F.2d at 1106. The Court, after carefully reviewing the ALJ's decision, has no doubt that the ALJ applied the correct legal standard to evaluate the severity of Valdez's impairments and that Valdez's claim of error in this regard is without merit.

Having a medically determined impairment as defined by the regulations, does not establish that the impairment alone or in combination with other impairments, is severe or disabling within the meaning of the regulations. *See Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir.1992); *Barajas v. Heckler*, 738 F.2d 641, 644 (5th Cir.1984); *Charleston v. Barnhart*, 2005 WL 17193225 (W.D.Tex. July 22, 2005) (diagnosis of an impairment alone is not sufficient to establish a severe impairment or a disability). In other words, not all severe impairments are disabling. *See Shipley*

*v. Commissioner*, 812 F.2d 931, 935 (5th Cir. 1987). Although Petitioner claims that all of his impairments affected his ability to work, he has not shown that the cited impairments significantly limit his ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

The ALJ determined that Valdez's history of a compression fracture of the thoracic spine, degenerative disc disease of the lumbar spine at L4-5 and L5-S1, and obesity were severe impairments that caused more than slight abnormalities and imposed more than minimal functional limitations. (Tr. 93.) He stated that, in making his RFC finding, he must consider all of Valdez's impairments, including those that were not severe. (Tr. 92.) The ALJ then fully discussed the medical evidence, mentioning many of Plaintiff's ailments.[4] (*Id*. 93-95.) The ALJ then evaluated the combined effects that all of these impairments had on Valdez's ability to work. (Tr. 96-98.) He found that Valdez's impairments prevented him from performing his past medium and heavy work, which required him to lift between 50 and 150 pounds as well as stand to work much of the day. (*Id*. 98, 124, 208.) As previously stated, the ALJ determined that the combined effects of all of Valdez's impairments limited him to a restricted range of light work consisting of: lifting only 20 pounds occasionally and 10 pounds frequently, standing and/or walking up to 6 hours in an 8-hour workday, sitting for about 6 hours in an 8-hour work day, with restrictions on operating hand and foot controls, and a reduced ability to climb, balance, stoop, kneel, crouch, and crawl. (*Id*. 96.) Accordingly, the ALJ properly analyzed the severity of Petitioner's medically determinable

---

[4]For example, the ALJ did discuss Valdez's back pain, pseudarthrosis of the T12 vertebra with the superior endplate of L1, compression of the L1 vertebral body, spinal stenosis at L4-5, disc protrusion of the left of midline posteriorly at L4-5, kyphosis, weakness in the lower extremities, gibbons deformity at T-12-L1. (Tr. 93-94.)

10

impairments and incorporated their effect on his ability to work. Plaintiff's claim that this case should be remanded because the ALJ used an incorrect legal standard at Step 2 is without merit.[5]

Valdez claims that the ALJ should have found that Valdez meets the listed impairment for disorders of the spine as defined in 20 C.F.R. Part 404, Subpt P, App. 1, § 1.04 (hereinafter referred to as Listing 1.04). (*Id*. at 10-11.) He alleges that the ALJ failed to consider the weakness in his legs, right hip impairment, clonus, curvature of the spine, and other spinal impairments. (*Id*. at 10.) He avers that his vertebral fracture, degenerative disc disease, spinal stenosis, and kyphosis are disorders of the spine meeting Listing 1.04. (*Id*. at 10-11.) The ALJ properly found that Valdez did not meet or equal the Listing 1.04. The regulations define disorders of the spine as:

> "1.04. Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested

---

[5] Because the ALJ used a standard of the same effect as *Stone*, the Court need not consider the Commissioner's argument that because the ALJ decided Petitioner's claims at Step 5, no *Stone* error occurred.

> by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b."

20 C.F.R. Part 404, Subpt P, App. 1, § 1.04. In finding that Valdez did not meet the criteria of Listing 1.04, the ALJ noted that the physical examinations failed to show evidence of atrophy or motor loss, accompanied by reflex loss as required in Part A of Listing 1.04. (Tr. 95.) Valdez was not diagnosed with spinal arachnoiditis as required in Part B of Listing 1.04. Additionally, the record did not show that Valdez had an inability to ambulate effectively, as required in Part C of Listing 1.04. (*Id.*) The inability to ambulate is defined as requiring the use of a handheld device such as a walker, or the use of two canes or crutches. 20 C.F.R. Part 404, Subpt P, App. 1, § 1.00B(2)(b). Valdez ambulates effectively with only one cane, thereby failing to meet the part C requirement. (Tr. 95, 108-09.)

For a claimant to show that his impairment meets or equals a listing, he must meet all of the specified criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Even with a diagnosis of vertebrae fractures, degenerative disc disease, spinal stenosis, or kyphosis, a claimant does not meet all the criteria for Listing 1.04. A claimant whose impairment fails to meet the stated criteria by even a slight margin fails to qualify. *Id.* at 530, n.8. The ALJ did not err in finding that Valdez did not meet or equal Listing 1.04.

**Whether Substantial Evidence Supports the ALJ's Credibility Determination**

Valdez alleges that the ALJ's credibility determination is not supported by substantial evidence. (Pl.'s Br. at 12-14.) He claims that the ALJ did not articulate each of the seven credibility analysis factors listed in 20 C.F.R. § 404.1529(c)(3) and did not perform the two-step analysis listed in SSR 96-7p. (*Id.* at 12-14.) He concludes that this was prejudicial. Further, he faults the ALJ for

12

failing to develop fully the record, claiming that additional evidence might have resulted in a different conclusion. (*Id*. at 14.)

"[T]he ALJ must consider subjective evidence of pain testified to by claimant and corroborated by others who have observed him." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981). Moreover, an ALJ's "[f]ailure to indicate the credibility choices made and the basis for those choices in resolving the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints requires reversal and remand [of the ALJ's decision]." *Id*. However, claimant's "statement as to pain or other symptoms shall not alone be conclusive evidence of disability." 42 U.S.C. § 423(d)(5)(A). Rather, "there must be medical signs and findings . . . which show the existence of a medical impairment that results from . . . abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which . . . would lead to a conclusion that the individual is under a disability." *Id*.

In *Scharlow* the ALJ failed to make *any* findings of credibility; however, the subsequent case of *Little v. Schweiker* interprets *Scharlow* as requiring the ALJ "to specifically address the credibility" of the claimant's corroborated testimony of subjective pain. *Id*. at 649; *Little v. Schweiker*, 555 F.Supp. 541, 547 (N.D. Tex. 1982).

This Court determines that the ALJ complied with *Scharlow* and *Little* because the ALJ "specifically address[ed] the credibility" of Plaintiff's testimony and indicated "the credibility choices made and the basis for those choices." *Scharlow*, 655 F.2d at 649; *Little*, 555 F.Supp. at 547. "Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected. . . . The major policy

13

underlying the harmless error rule is to preserve judgments and avoid waste of time." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

A full and proper credibility evaluation is entitled to considerable deference. *See Carrier*, 944 F.2d at 247. In this case, the ALJ fully and properly assessed, albeit in narrative fashion, the credibility of Valdez's claim of disabling impairments. He discussed the medical evidence pertaining to Valdez's subjective complaints and summarized the objective medical evidence. (Tr. 96-97, 93-95.) The ALJ found that Valdez's symptomology and functional limitations appeared to be exaggerated. (Tr. 96) The ALJ cited evidence in support of these findings. He noted that Valdez's pain management specialist had suggested certain treatment modalities to reduce Valdez's pain, but Valdez was unwilling to consider them. (*Id*. 97.) The ALJ also noted that although Valdez testified that he is drowsy and unable to focus due to side-effects from medication, Valdez had indicated in his Disability Report that he took Flexeril, Kadian, and Vicodin for pain but experienced no side effects. (*Id*. 97.) Additionally, the ALJ stated that during a 2006 consultative examination by James B. Hays, M.D., Valdez continuously braced himself which made it difficult for the physician to check his deep tendon reflexes. (*Id*. 94, 314.) Valdez claimed that this relieved his back pain; however, the nurse noted that when Valdez leaned back while she checked his vital signs, he did not brace himself as he had for the examiner. (*Id*.) The neurological examination was basically normal. (*Id*. 94, 97, 315.) Dr. Hays noted that "the patient had had little or no attempts at physical therapy in the past." (*Id*. 315.)

Further, the ALJ properly considered that a medical condition that can be remedied by surgery or medication is not disabling. 20 C.F.R. §§ 404.1530(b), 416.930(a): *see also Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986). He related that Dr. Nelson examined Valdez on

October 19, 2006, for complaints of back pain and noted Valdez's statement that medication improved his pain. (Tr. 96-96, 328-29.) Valdez had normal range of motion and "5/5" strength in his lower extremities. (*Id*. 95, 329.) Valdez returned to Dr. Nelson in November 2006 and again in February 2007, stating that his medication was not providing adequate relief. (*Id*. 95, 332, 339.) Dr. Nelson increased his Kadian medication from 20 mg to 30 mg. (*Id*. 338-39.) On March 2, 2007, Valdez reported that he had reduced pain. (*Id*. 95, 341.) Dr. Nelson continually noted during Valdez's numerous examinations that Valdez was not in any acute distress and did not exhibit any abnormal pain behavior. (Tr. 16, 18, 20, 22, 24, 2628, 31 33, 35, 37, 40, 42. 45, 47, 49, 51, 53, 57, 60, 62, 64, 67, 69, 71, 73, 75, and 79.) Further, he was awake and oriented x 3. (*Id*.)

The ALJ reviewed the medical evidence and considered the intensity, persistence, and limiting effects of Valdez's impairments to determine the extent to which they limited his ability to perform work activities. (*Id*. 96.) The ALJ then summarized his previous detailed discussion of the medical evidence. (*Id*. 96-97.) The ALJ found the State Agency medical consultant's opinions and found their opinions generally credible. (*Id*. 98.)

The ALJ noted Valdez's activities of daily living, the treatment of Valdez's pain, as well as the factors contributing to or relieving his pain. (*Id*. 97.) He then considered the effectiveness and side effects of Valdez's medications. (*Id*. 97.) The ALJ concluded that Valdez's claims were credible only to the extent that his impairments limited him to a restricted range of light work. (*Id*. 97.) The decision of whether a claimant is disabled is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e); *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). The ALJ properly reserved the disability decision to himself and thus, gave no weight to the treating physician's opinion that Valdez was disabled. (Tr. 97, 243, 427, 428.)

The ALJ's decision included the relevant credibility factors listed in 20 C.F.R. § 404.1529(c)(3). (*Id*. 96-98.) Further, he discussed the limiting effects of Valdez's objective symptoms in making his RFC determination. (*Id*. 96-98.) The Court finds no prejudicial error in the ALJ's determination of Valdez's credibility.

Valdez urges that the ALJ failed to fully develop the record and that his failure was prejudicial. (Pl.'s Br. at 14.) The Commissioner points out that Valdez has the burden of proof in steps one through four of the sequential evaluation process. *Leggett*, 67 F.3d at 564. "The ALJ's duty to investigate . . . does not extend to possible disabilities that are not alleged by the claimant or to those disabilities that are not clearly indicated on the record." *Id*. at 566 (claimant did not allege mental impairments in his application nor before the ALJ). As previously discussed, Valdez's 2006 application alleged a disability due to a back injury, leg problems, a stomach virus. (Tr. 199.) The ALJ considered Valdez's complaints that he could not lift anything heavy, sit too long or too far, and that he had leg weakness. The ALJ incorporated any limitations that were supported by the record into his RFC finding. (*Id*. 199, 215.) Valdez does not indicate what additional evidence was available. In sum, Valdez's claim that the ALJ should have further developed the record is without merit.

## RECOMMENDATION

The Court recommends that the District Court affirm the Commissioner's decision and deny Valdez the relief requested.

Signed, this 16th day of December, 2010.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**

## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must serve and file written objections within fourteen days after service. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).